■ In the Matter of JOYCE SS., a Child Alleged to be Neglected. TIOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SUE RR., Appellant. [651 NYS2d 995] —Peters, J. Appeal from an order of the Family Court of Tioga County (Callanan, Sr., J.), entered July 5, 1995, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's child to be neglected.

Joyce SS., born in 1984, was placed in foster care with her paternal aunt from 1987 to 1992. When she was returned to respondent's home in 1992, respondent was living with her paramour.* He had four sons from a prior marriage, ranging in age from eight through 12, who were residing with his ex-wife. When his ex-wife and sons were evicted from their trailer, they all moved into respondent's home. Although Joyce and the other children played together and appeared to get along, Joyce disclosed, during one of her counseling sessions at the Tioga County Mental Health Clinic, that one month earlier, one of the paramour's sons had threatened her with a knife. After this incident was reported to petitioner, Joyce was sent back to her aunt's home. Petitioner decided that Joyce should not be allowed to return until the paramour's sons, including their mother, had moved out of the home. However, even after petitioner returned Joyce to respondent's home, her paramour's ex-wife and sons were still there. Ultimately, petitioner arranged for alternative housing.

---

* Joyce's father voluntarily terminated his parental rights on December 29, 1988.

On November 29, 1994, a neglect petition was filed against respondent alleging that Joyce's physical, mental or emotional condition has been impaired or was in imminent danger of becoming impaired as a result of respondent's failure to exercise a minimum degree of care by failing to take reasonable steps to assure the child's participation in mental health counseling that had been specifically arranged and scheduled for her on a substantial number of occasions, as well as her failure to ensure that her paramour's ex-wife and sons had left her home. Family Court issued a temporary order of protection which required respondent to ensure that Joyce would not be in the company of her paramour's children or his ex-wife. After a fact-finding hearing, the court found Joyce to be a neglected child as defined by the Family Court Act (*see*, Family Ct Act § 1012 [f] [i] [A]), based upon respondent's failure to take reasonable steps to ensure her child's participation in much needed mental health counseling. The order of protection was continued and extended to include numerous friends and relatives of not only respondent but also her paramour.

After the dispositional hearing, Family Court found that it was in Joyce's best interest to continue in respondent's custody under the supervision of petitioner for a period of one year (*see*, Family Ct Act § 1054). However, numerous terms and conditions were set forth in that order which included, *inter alia*, the following: "[Respondent] will encourage [the paramour] to set up an appointment with Tioga County Drug and Alcohol Services for an evaluation and follow all recommendations as per the Order of Protection dated June 21, 1995, and [respondent] will take affirmative steps to remove [the paramour] from the household if he fails to obey the order within 45 days of the date of the signing of this order." On appeal, respondent contends that there was insufficient evidence demonstrating the requisite causal connection between her acts or omissions and the child's emotional condition (*see*, *Matter of Rebecca W.*, 122 AD2d 582; *Matter of Keith R.*, 123 Misc 2d 617). We disagree.

Our review of the record supports Family Court's determination that petitioner sustained its burden of proving by a preponderance of the evidence (*see*, Family Ct Act § 1046 [b] [i]; *Matter of Tammie Z.*, 66 NY2d 1) that there was a significant causal nexus between respondent's behavior and an exacerbation of the child's condition by her failure to obtain proper mental health treatment for her child (*see*, *Matter of Heith S.*, 189 AD2d 875, 876). Every professional who worked with respondent or the child testified that Joyce's behavior deterio-

rated when she returned home and that respondent failed to take appropriate steps in response to the child's serious mental health problems.

William Wittlin, a psychiatrist at the Tioga County Mental Health Clinic where the child had gone for counseling since 1991, concluded that she suffered from a depressive neurosis and suspected that a more serious depression was surfacing as part of an evolving borderline personality disorder. Absent the implementation of appropriate mental health recommendations, he feared the child was at risk for serious psychopathology. Finally, he testified that with a reasonable degree of medical certainty it was his opinion that the child's mental or emotional state had been impaired by respondent.

Elizabeth Ellison, a clinical social worker who had been treating the child since 1991, confirmed the above testimony and further explained that the child's change in custody coupled with the tension between respondent and the aunt had a negative impact upon the child. Even though weekly appointments were scheduled with Ellison, she testified that they were often missed if the child was in respondent's care. The record reflects that between July 1992 and September 1994, 35 out of 77 appointments were missed.

Cindy Hanbury, a caseworker, visited respondent at her home from September 1993 to March 1994 at least twice a month. After Hanbury observed respondent treating the child in an inappropriate manner, Hanbury recommended parenting classes, mental health counseling, and drug and alcohol counseling for respondent's paramour. Notwithstanding such advice, respondent failed to attend six out of the eight parenting classes and rejected the suggestion of counseling for both herself and her paramour. In March 1994, Gail Fitzpatrick became respondent's preventive caseworker. She testified that respondent frequently missed the child's mental health appointments and continued to refuse counseling for herself. Abrahim Ahmed, a pediatrician who had treated the child for hyperactivity, similarly testified that notwithstanding his recommendation that the child be seen by a psychologist, he had no record that such recommendation was followed. Finally, Margaret White, the child's fourth grade teacher, testified that Joyce exhibited unusual behavior in class, and was alternatively aggressive and withdrawn. Despite White's communication with respondent, she failed to follow up with much needed psychological or other supportive services for Joyce.

With such showing sufficient to support a finding that respondent was made aware of the great need for the child to

receive mental health treatment and that, despite such awareness, no treatment was sufficiently pursued at the school, at a clinic or at any other venue, the finding of neglect by Family Court was in all respects proper (*see, Matter of Heith S.*, 189 AD2d 875, *supra; cf., Matter of Jeremy VV.*, 202 AD2d 738; *Matter of Josephryan G.*, 191 AD2d 1017).

Similarly unpersuasive is respondent's challenge to the conditions placed in the order of protection regarding her paramour. Pursuant to Family Court Act § 1054 (a), "[i]f the order of disposition releases the child to the custody of his parent * * * the court * * * may enter an order of protection under section [1056] * * * An order of supervision entered under this section shall set forth the terms and conditions of such supervision that the respondent must meet" (*see*, Family Ct Act § 1054 [a]). Under these circumstances, great discretion is given to Family Court as to the imposition of appropriate conditions (*see generally, Matter of Jason M.*, 146 AD2d 904; *Matter of George C.*, 122 AD2d 943). Additionally, 22 NYCRR 205.83 (a) (5) provides that the terms and conditions may include requiring cooperation "in obtaining and accepting medical treatment, psychiatric diagnosis and treatment, [and] alcoholism or drug abuse treatment" (*ibid.*) which the court determines necessary "to protect the child from injury or mistreatment and to help safeguard the physical, mental and emotional well-being of the child" (22 NYCRR 205.83 [b] [7]).

Contrary to respondent's contentions, the conditions imposed by Family Court come within the broad purview of these provisions. The record is replete with evidence that respondent was aware of and had, at times, agreed that her paramour had an alcohol abuse problem. Further evidence revealed that he openly flouted the court's prior orders of protection, putting the child at risk of injury, violence and/or molestation. Finding the conditions imposed to be necessary to not only protect this child from harm but also to promote an environment where her physical, mental and emotional well-being could better flourish, we decline to disturb them.

The order of Family Court is affirmed in its entirety.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, without costs.