Matter of Tina X. v Thomas Y. (2024 NY Slip Op 06391)

Matter of Tina X. v Thomas Y.

2024 NY Slip Op 06391

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

536197
[*1]In the Matter of Tina X., Appellant,
v
Thomas Y. et al., Respondents. (Proceeding No. 1.)
In the Matter of Thomas Y. et al., Respondents,
v
Tina X., Appellant, and Irving AA., Respondent. (Proceeding No. 2.) (And Other Related Proceedings.)

Calendar Date:November 20, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Cheryl L. Sovern, Malta, for appellant.
The Law Offices of Nancy E. Bunting, Esq., Ballston Spa (Nancy E. Bunting of counsel), for Thomas Y. and another, respondents.
Raysheea T. Turner Bryant, Albany, for Irving AA., respondent.
Vicki J. Prager, Northville, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Saratoga County (Amy J. Knussman, J.), entered September 1, 2022, which, among other things, granted petitioners' application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Tina X. (hereinafter the mother) and respondent Irving AA. (hereinafter the father) are the parents of the subject child (born in 2009). A custody order entered by Family Court (Jensen, J.) in October 2020 on the parties' consent granted joint legal custody of the child to the mother and the maternal grandparents, Thomas Y. and Amy Z. (hereinafter collectively referred to as the grandparents),[FN1] with the grandparents having final decision-making authority. Although the order did not formally denominate a residential custodian, the record establishes that the child has been in the grandparents' care since 2016. The order further set forth a schedule of unsupervised parenting time for the mother, and provided that the mother and child "shall immediately enroll in therapeutic counseling" with a specified counselor and that the grandparents "shall ensure that the minor child attends said therapeutic counseling until successful discharge."
In August 2021, the mother filed violation petitions against the grandparents, contending that she was being denied visitation with the child. The grandparents, in turn, filed a modification petition seeking to have the mother's contact with the child supervised, alleging that the mother had made several harassing phone calls to their residence.[FN2] Several no-contact temporary orders of protection were issued against the mother during the pendency of these proceedings, which were extended multiple times. The parties also filed several family offense petitions against one another, and the mother filed a modification petition seeking to modify the orders of protection to allow her to have telephone contact with the child once per week and visitation once per month. Following fact-finding and Lincoln hearings in August 2022, Family Court issued an order that, as relevant here, (1) dismissed the mother's violation petitions; (2) granted the grandparents' family offense petitions, together with orders of protection; (3) modified the prior custody order by awarding the grandparents and the father joint legal custody of the child; (4) formally denominated the grandparents as the primary residential custodians; and (5) granted the mother supervised telephone communication with the child once per month through counselors, along with additional written communication through counselors. The court separately issued two stay-away orders of protection in favor of the child, with an expiration date of September 1, 2024, that had limited carve-outs for the supervised communications. The mother appeals.
Contrary to the mother's contention, Family Court did not err in dismissing her petitions alleging that the grandparents violated the parenting time provisions [*2]of the October 2020 order. As the proponent of a violation petition, the mother was required to prove, by clear and convincing evidence, that the grandparents knowingly disobeyed a lawful, clear and unequivocal order to the detriment of the mother's rights (see El-Dehdan v El-Dehdan, 26 NY3d 19, 29, 33-35 [2015]). When this Court reviews "Family Court's determination on a violation petition, we defer to any credibility assessments made, and we will not disturb the court's decision absent an abuse of discretion" (Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628 [3d Dept 2019]; see Matter of Beesmer v Amato, 162 AD3d 1260, 1261 [3d Dept 2018]).
Throughout her hearing testimony, the mother alleged that the grandparents violated the October 2020 order by, among other things, failing to facilitate therapeutic counseling with the child and declining to allow her to exercise her parenting time. The hearing testimony established that the grandparents enrolled the child in therapeutic counseling in the fall of 2020, as required by the order. The mother's first session with the child did not occur until several months later — a delay she attributed to the grandmother's failure to inform her to contact the counselor directly. The October 2020 order, however, explicitly named the counselor and did not require the grandparents to facilitate the mother's attendance. While it is undisputed that the mother had only a few counseling sessions with the child, the last one being in or around June 2021, she did not establish deliberate interference on the part of the grandparents. Rather, the record indicates that the limited sessions were largely attributable to circumstances beyond the grandparents' control, including at least one instance where the mother failed to show. The mother also did not establish by clear and convincing evidence that the grandparents deliberately interfered with her visitation rights, acknowledging that she "did see [the child] regularly" before the temporary orders of protection were issued against her during the pendency of these proceedings. The grandparents, for their part, denied that they had ever interfered with the mother's visitation rights under the October 2020 order and refuted the mother's related allegation that they had rebuffed her efforts to be involved in the child's schooling. In light of the foregoing, Family Court did not abuse its discretion in dismissing the mother's violation petitions (see Matter of Aaron K. v Laurie K., 187 AD3d 1423, 1425 [3d Dept 2020]; Matter of James XX. v Tracey YY., 146 AD3d 1036, 1038 [3d Dept 2017]).
The mother also challenges Family Court's modification of the parenting time provisions set forth in the October 2020 order to the extent of suspending her in-person visitation with the child, reducing her telephone communication to once per month, and requiring such communication to be through counselors. "[P]arenting time with a noncustodial parent is presumed to be in a child's best [*3]interests" (Matter of Henry CC. v Antoinette DD.,222 AD3d 1231, 1234 [3d Dept 2023] [internal quotation marks and citations omitted]). Thus, "unless parenting time with the noncustodial parent would be detrimental to the child's welfare, Family Court is required to fashion a parenting time schedule that affords the noncustodial parent frequent and regular access to the child" (Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [3d Dept 2020]; accord Matter of Henry CC. v Antoinette DD., 222 AD3d at 1234). Family Court has broad discretion in this regard and this Court "will not disturb [a parenting time] determination unless it lacks a sound and substantial basis in the record" (Matter of Henry CC. v Antoinette DD., 222 AD3d at 1234 [internal quotation marks and citations omitted]).
Here, the grandparents established a change in circumstances in support of their modification petition warranting a review of whether the parenting time provisions of the October 2020 order remained in the child's best interests (see Matter of Richard CC. v Lacey DD., 230 AD3d 1389, 1390 [3d Dept 2024]). They presented evidence that the mother made a series of harassing phone calls to their residence over the course of several days in August 2021 — including during the middle of the night — and that the child heard some of the voice messages. The messages included statements that the mother was going to come and get the child and at least one contained a threat of physical violence against the grandfather. Due to the incessant nature of the calls, law enforcement suggested that the grandparents disconnect their answering machine.
The mother also made numerous unfounded child protective services complaints against the grandparents following entry of the October 2020 order, triggering multiple welfare checks by law enforcement, including in the middle of the night. The child was required to speak with law enforcement on each occasion and there was compelling evidence that the stress of the situation was detrimental to the child's emotional well-being. There was also evidence that the mother discontinued her mental health medication and was not, at the time of the hearing, amenable to taking the steps necessary to address legitimate concerns in this regard (see Matter of Pettei v Pettei, 207 AD3d 670, 672 [2d Dept 2022]; Matter of Andrew L. v Michelle M., 140 AD3d 1240, 1241 [3d Dept 2016]). A psychologist who met with all of the parties in March 2022, pursuant to an order issued in January 2022, rendered an evaluation report, which was received into evidence as a court exhibit, recommending against further therapeutic visitation between the mother and child. The psychologist expressed concern that a continuation of the status quo would be "potentially harmful" to the child until the mother was "stabilized and ha[d] full control of her emotional outbursts." Providing due deference to Family Court's factual findings and credibility determinations, and having reviewed the [*4]Lincoln hearing transcript, we conclude that the limitations on visitation imposed by Family Court have a sound and substantial basis in the record (see Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1146-1149 [3d Dept 2020]; Matter of Attorney for the Children v Barbara N., 152 AD3d 903, 906 [3d Dept 2017]). We take note that in her responding brief, the attorney for the child urges this Court to affirm Family Court's decision.
The mother also seeks dismissal of orders of protection issued simultaneously with the order on appeal which required her to stay away from the child, except as authorized through counselors. Since the orders of protection expired by their own terms on September 1, 2024 (see Matter of Kristine Z. v Anthony C., 43 AD3d 1284, 1284-1285 [4th Dept 2007], lv denied 10 NY3d 705 [2008]), and the mother does not challenge the family offense findings underlying such orders (compare Matter of Veronica P. v Radcliff A., 24 NY3d 668, 671 [2015]; Matter of Zaytseva v Frazier, 214 AD3d 895, 896 [2d Dept 2023]; Matter of Marquardt v Marquardt, 97 AD3d 1112, 1113 [4th Dept 2012]), this argument is moot.[FN3] The mother's remaining contentions, to the extent not expressly addressed, have been considered and found unavailing.
Clark, J.P., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The maternal grandmother is actually a stepgrandmother.

Footnote 2: The grandparents originally sought to suspend all contact between the mother and child, but subsequently amended their petition to obtain supervised contact.

Footnote 3: We are mindful that in a separate proceeding initiated by the grandparents in October 2022, and after a hearing in May 2023, the orders of protection were modified, and a new expiration date of September 2026 was imposed. Since that proceeding is not before this Court, the modification cannot be reviewed on this appeal (see Matter of Blaize F., 64 AD3d 936 [3d Dept 2009]; Matter of Destiny HH., 63 AD3d 1230, 1231 [3d Dept 2009], lv denied 13 NY3d 706 [2009]).